UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

EL SAYYID NOSAIR,

                            Petitioner,

    -against-

UNITED STATES OF AMERICA,

                            Respondent.

93 Cr. 00181
00 Civ. 08383 (RJH) (KNF)

**MEMORANDUM OPINION AND ORDER**

---

Richard J. Holwell, District Judge:

      Petitioner El Sayyid Nosair is currently serving his life prison sentence at the Federal Correctional Complex at Terre Haute, Indiana. Nosair brings a petition under 28 U.S.C. § 2255 requesting relief from his convictions for murder, seditious conspiracy, and other crimes. His allegations arise from several items of "newly discovered evidence." But Nosair admits in the petition that he discovered all of this evidence over a year before bringing the petition. As such, the petition is untimely under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). For that reason, discussed more fully below, Nosair's petition is dismissed.

1

## I. BACKGROUND

**A. Nosair's Conviction and Section 2255 Petition**

On October 1, 1995, after a nine-month jury trial in the United States District Court for the Southern District of New York, Nosair was convicted of seditious conspiracy, two counts of attempted murder, murder in furtherance of a racketeering enterprise, attempted murder of a federal officer, three counts of use of a firearm in relation to a crime of violence, and possession of a firearm with an obliterated serial number. *See United States v. Rahman*, 189 F.3d 88, 103-04 (2d Cir. 1999). The trial and subsequent convictions arose out of the 1993 World Trade Center ("WTC") bombing, but Nosair himself was acquitted of the bombing conspiracy count. *See id.* at 103. Nosair was subsequently sentenced by Judge Michael B. Mukasey to life imprisonment for the murder charge, and to a total of forty additional years on the other charges, including 240 months on the seditious conspiracy charge. *See id.* at 111. The Government's prosecution team at Nosair's trial included Assistant United States Attorneys Andrew C. McCarthy, Patrick J. Fitzgerald (now the United States Attorney for the Northern District of Illinois), and Robert S. Khuzami (now the Director of the Division of Enforcement of the United States Securities and Exchange Commission).

In November 2000, Nosair filed a "Notice of Motion" to vacate his sentence pursuant to 28 U.S.C. § 2255. (Docket no. [1] in 2000 Civ. 08383.) Reading the filing as a motion for an extension of time to file a Section 2255 petition, Judge Mukasey denied the filing that same month, without prejudice to Nosair's right to file a Section 2255 petition. (Docket no. [906] in 1993 Cr. 00181.) Nosair subsequently filed Section 2255 petition in the Western District of Louisiana, where he was then incarcerated, in August

2002.  (*See* Lockard Decl. of Jan. 16, 2010 Ex. 2 at unnumbered page 3.)  In December 2002, that court transferred the petition to this court; but Judge Mukasey dismissed it in May 2003 as "duplicative" of the November 2000 filing, that he had previously denied.  (*Id.* at 1, 4; *see also* Docket no. [2] in 2003 Civ. 03766.)

In January 2008 while incarcerated in Colorado, Nosair filed a Section 2241 habeas petition in the District of Colorado.[1]  In that petition, Nosair alleged he had "newly discovered evidence" based on Peter Lance's 2006 book Triple Cross that the Government had pressured a potential defense witness, Ali Mohamed, not to appear at Nosair's federal trial.  (*See* Lockard Decl. of Jan. 16, 2010 Ex. 5 ("2241 Petition") at 3, 3h.)  Nosair also alleged that his entire prosecution was unconstitutional because 18 U.S.C. § 3231, the United States Code provision that grants District Courts original and exclusive jurisdiction over federal criminal actions, was never properly enacted.  (*Id.* at 4.)

On January 11, 2008, the District of Colorado ordered Nosair to show cause why his petition should not be denied since Nosair's contentions "clearly call[ed] into question the validity of his conviction and sentence," as opposed to "the execution of his sentence."  (*See* Lockard Decl. of Jan. 16, 2010 Ex. 6 at 3.)  In other words, the petition should have been brought as a Section 2255 petition in the sentencing court (S.D.N.Y.) instead of as a Section 2241 petition in the court of the district of incarceration (D.

---

[1] When a Section 2255 petition is "inadequate or ineffective to test the legality of [a prisoner's] detention," a prisoner may file a Section 2241 petition. *Estrella v. Terrell*, No 10-CV-3777, 2011 WL 1837775, at *1 (E.D.N.Y. May 13, 2011) (citing 28 U.S.C. § 2255(e)).  A habeas petition pursuant to 28 U.S.C. § 2241 challenges "the *execution* of a sentence—in contrast to the *imposition* of a sentence . . . [. E]xecution of a sentence includes matters such as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions. . . . For habeas petitions brought under § 2241 challenging present physical confinement, jurisdiction lies [ ] only . . . in the district of confinement." *Id.* (internal quotation marks omitted; citing *Levine v. Apker*, 455 F.3d 71, 78 (2d Cir. 2006)).

Colo.).  (*See id.* at 2 ("A habeas corpus application pursuant to 28 U.S.C. § 2241 is not an additional, alternative, or supplemental remedy to the relief afforded by motion in the sentencing court under § 2255.  The exclusive remedy for testing the validity of a judgment and sentence, unless it is inadequate or ineffective, is that provided for in 28 U.S.C. § 2255." (internal quotation marks and citations omitted)).)

Nosair filed a written response to the order, but the District of Colorado found that the response mostly reiterated the arguments in the petition, and dismissed the Section 2241 petition on June 5, 2008.  The Tenth Circuit affirmed the dismissal on January 23, 2009.  (Lockard Decl. of Jan. 16, 2010 Ex. 12 at 5.)

On March 9 and 27, 2009, Nosair filed two documents in this action that together constitute his current Section 2255 petition (the "Petition").  The first, dated March 9, 2009, is titled "Motion for an Evidentiar [sic] Hearing / And a Request for a New Trial Based on Newly Discovered Evidence"; and the second, dated March 27, 2009, is titled "Motion for Reconsideration, for Granting Relief from Judgment and for Request to a New Trial or Reverse of Judgment, and an Evidentiary Hearing" (together the "Petition"). (*See* Resp't's Mem. of May 12, 2011 Ex. A (the "3/9 Motion"); Ex. B (the "3/27 Motion").)

The Petition alleges four new discoveries. First is Nosair's April 2007 discovery, through his reading of Peter Lance's <u>Triple Cross</u> (William Morrow 2006), that Mohamed had been interviewed by the Federal Bureau of Investigation ("FBI") prior to Nosair's trial.  Nosair alleges, however, that Mohamed never testified at Nosair's federal trial and the Government withheld the information gained during the FBI interview from Nosair during his trial.  (3/27 Motion at 3.)  The information included (1) that Mohamed

4

had worked for the Central Intelligence Agency ("CIA") and the FBI, and had served in the United States "Special Forces" stationed at Fort Bragg, North Carolina; and (2) that "boxes of evidence" taken from Nosair by the Manhattan District Attorney's office in connection with Nosair's New York State trial had been turned "over to the feds," and "put into evidence" in Nosair's federal trial. (*Id*. at 3-4.) In addition, Nosair has alleged that the Government "ke[pt] a Major Witness away from Nosair's state and federal trials." (*Id*. at 10.) This allegation is taken directly from Lance's Triple Cross. Lance, at 172-76.

Nosair's second discovery is his January 2008 revelation, through legal research, that 18 U.S.C. § 3231, the United States Code provision that grants United States District Courts "original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States," 18 U.S.C. § 3231, is unconstitutional. (3/27 Motion at 4.) This assertion is based on Nosair's perception that due to a mix-up between the United States Senate and House of Representatives in 1947 and 1948, Section 3231 was never constitutionally enacted. (*See id*. at 13.)

Nosair's third discovery came in October 2008. He apparently then read the transcript of Mohamed's guilty plea taken by this court's Judge Leonard B. Sand on October 20, 2000. (*See id*. at 4-5, and Ex. 4.) Nosair alleges that this transcript "confirms the the [sic] information in the First newly discovered evidence." (3/27 Motion at 4-5.)

Nosair's final discovery, also made in October 2008, apparently came from reading Steve Coll's Ghost Wars (Penguin 2004). Nosair alleges that on February 8, 1995, during the course of his federal trial, FBI agent Bradley Garrett arrested WTC

5

bombing conspirator Ramzi Yousef in Pakistan and transported him by airplane back to the United States.  (3/27 Motion at 5, and Ex. 5.)  During the course of that flight, Garrett asked Yousef whether he "committed" the WTC bombing and Yousef answered, "I masterminded the explosion."  (3/27 Motion at 5.)  Yet, alleges Nosair, the prosecution in his federal trial "never revealed to Nosair's defense the story mentioned by Agent Garrett, while it continued to accuse Mr. Nosair . . . that he is the mastermind of the 1993 World Trade Center."  (*Id*.)

After reviewing the Petition to determine whether it was subject to summary dismissal under Rule 4(b) of the Rules Governing Section 2255 Proceedings (hereinafter the "2255 Rules"), the Court referred this action to Magistrate Judge Kevin Nathaniel Fox for a Report and Recommendation on April 16, 2010.  (*See* Docket No. [24].)  After relieving Nosair's federal trial counsel of their obligation to represent Nosair in this action,[2] Judge Fox directed Nosair to submit an application to request counsel which Judge Fox granted on July 23, 2010.  (*See* Docket No. [31].)  Marjorie M. Smith was appointed counsel the same day.  (*See* Docket No. [32].)  Judge Fox has since graciously consented to a withdrawal of the reference in this matter; and as such the Court now rules on Nosair's Petition.

---

[2] Nosair's federal trial counsel was apparently re-appointed counsel for purposes of Nosair's Section 2255 petition by Judge Mukasey.  (*See* Pet.'s Opp'n of May 15, 2011 at 1 n.2.)

## II.  DISCUSSION

### A.  Untimeliness

"As the statute of limitations is merely an affirmative defense, and not a jurisdictional element, it need not be resolved before reaching the merits of a claim." *Memnon v. Clifford Chance US, LLP*, 667 F. Supp. 2d 334, 340 n.5 (S.D.N.Y. 2009) (internal citation omitted).  That said, the Court likewise need not "reach the merits of [a] claim [when] the statute of limitations has expired." *Rainwater v. United States*, No. 08 Civ. 5115, 2010 WL 5248585, at *6 (S.D.N.Y. Dec. 15, 2010) (ruling solely on statute of limitations grounds).

AEDPA provides a one-year statute of limitations for Section 2255 motions.  28 U.S.C. § 2255(f); *see Gully v. United States*, 05 Civ. 1845, 2011 WL 347413, at *1 (S.D.N.Y. Feb. 1, 2011).  As relevant to this Petition, that limitations period begins running from "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence."  28 U.S.C. § 2255(f)(4).

#### 1.  Facial Untimeliness of the Allegations Concerning Mohamed

In his Petition, Nosair concedes that he "discovered" the alleged violations relating to Mohamed in April 2007, when he read Lance's Triple Cross.  Yet the Section 2255 Petition was filed, at earliest, on March 9, 2009.  As concerns the evidence relating to Mohamed, therefore, the Petition is untimely by almost one year.

### 2. Facial Untimeliness of the Allegations Concerning 18 U.S.C. § 3231

The Petition is also facially untimely concerning the constitutionality of 18 U.S.C. § 3231. Nosair alleges he "discovered" that that statute was never properly enacted in 1948 through his own legal research in January 2008. Therefore the Petition is at least two months late on this issue.

### 3. Untimeliness of the Allegations Concerning Mohamed's Guilty Plea

Nosair's "third newly discovered evidence" is that in Mohamed's 2000 plea allocution, Mohamed confirmed that he spoke to the FBI in 1994. In fact, Mohamed's statements on the subject, *in toto*, read: "At about this time, late 1994, I received a call from an FBI agent who wanted to speak to me about the upcoming trial of United States versus Abdel Rahman. I flew back to the United States, spoke to the FBI, but didn't disclose everything that I knew." (*See* Lockard Decl. of Jan. 16, 2010 Ex. 13 at 28:22-29:1.) Nosair alleges he discovered this information in October 2008, a date within AEDPA's one-year statute of limitations. To the extent this statement has any relevance to Nosair's Petition, however, it merely touches on the same information Nosair admits to having "discovered" in April 2007—namely that Mohamed had had conversations with the FBI and/or the *Rahman* prosecution team in 1994. Thus the allegations remain untimely under AEDPA, since "the facts supporting the claim or claims presented" actually were "discovered through the exercise of due diligence" in April 2007, not October 2008. *See* 28 U.S.C. § 2255(f)(4).

### 4. Untimeliness and Lack of Merit of the Allegations Concerning Yousef's 1995 Statement

Nosair alleges that in October 2008 he discovered, through reading Seve Coll's book Ghost Wars, that World Trade Center bombing conspirator Ramzi Yousef admitted to the FBI in February 1994 that he, Yousef, "masterminded" the bombing. (Pet'r's Mot. of Mar. 27, 2009 at 5.)  Yet, alleges Nosair, the prosecution in his federal trial "never revealed to Nosair's defense [that] story . . . while it continued to accuse Mr. Nosair . . . that he is the mastermind." (*Id*.)  This allegation was not contained in Nosair's January 2008 Section 2241 petition in the District of Colorado.  It is, however, facially timely since October 2008 is less than one year prior to March 2009, when Nosair filed the current Petition.

Upon closer examination however, and with no need for any evidentiary hearing, it becomes clear that Nosair had knowledge of Yousef's statement *even as far back as during his federal trial*.  As Judge Mukasey wrote in denying the habeas petitions of nine of the defendants, all of which cited the same evidence of the FBI's interviews of Yousef—including that of Nosair's cousin Ibrahim A. El-Gabrowny—defense counsel during the trial in 1995 were given the relevant FBI interview reports.  Specifically, Yousef's "statements then were disclosed in redacted form to the defendants during trial [in 1995], when Yousef himself was made available to the defendants for interview—an opportunity Yousef denied, choosing instead to exercise his Fifth Amendment right to silence." *Elgabrowny v. United States*, No. 93 Cr. 181, 2003 WL 22416167, at *2 (S.D.N.Y. Oct. 22, 2003).  This claim is therefore sixteen years late.

And even if the allegation concerning Yousef were timely—which it is not—it clearly fails two elements required for *Brady* relief, and likely fails all three.

The thrust of Nosair's claim is that the Government suppressed ("never revealed") the statement Yousef gave the FBI during Nosair's federal trial. (Mot. of Mar. 27, 2009 at 5.) Therefore, in addition to his styling the claim as one arising under *Brady v. Maryland*, 373 U.S. 83 (1963), (*see id.* at 7 (titling claims as "Brady Claim"), 12 (arguing that elements of a *Brady* claim exist)), Nosair's claim invokes *Brady* in substance.

"In order to establish a *Brady* violation, a criminal defendant must show that: (1) the undisclosed evidence was favorable to him, either because it is exculpatory or because it is impeaching; (2) the evidence was in the state's possession and was suppressed, either willfully or inadvertently; and (3) the defendant was prejudiced as a result of the failure to disclose. In addition, the undisclosed evidence must be 'material,' *i.e.,* the defendant must show that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Mack v. Conway*, No. 05 Civ. 6519, 2010 WL 1140877, at *14 (S.D.N.Y. Mar. 23, 2010) (internal quotation marks and citations omitted); *see also Elgabrowny*, 2003 WL 22416167, at *4 ("[A] defendant who seeks relief after trial based on a claimed *Brady* violation must show (i) that the government suppressed evidence (ii) that such evidence was favorable to him, and (iii) that such evidence was material."). "A 'reasonable probability' of a different result is . . . shown when the Government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Elgabrowny*, 2003 WL 22416167, at *4 (quoting *Kyles v. Whitley*, 514 U.S. 419, 436 (1995)). Moreover,

10

evidence is not "suppressed" when "the defendant knew . . . or should have known . . . of the essential facts permitting him to take advantage of any exculpatory evidence." *Id*.

First, as mentioned above in discussing timeliness, it appears that Yousef's admission was not suppressed.

Second, Yousef's admission was in no way exculpatory *for Nosair*. Nosair was convicted of seditious conspiracy and several murder and gun charges. But he was *acquitted* of the bombing conspiracy charge. An admission by a conspirator in a conspiracy in which Nosair *was not* involved, that that conspirator masterminded that acquitted conspiracy, has nothing whatsoever to do with Nosair's convictions for murder, illegal gun possession, or conspiring to wage war against the United States.

Finally, the allegedly suppressed statement does not undermine confidence in Nosair's seditious conspiracy conviction. Seditious conspiracy is defined as the conspiracy, between two or more persons, "in any place subject to the jurisdiction of the United States . . . to overthrow, put down, or to destroy by force the Government of the United States, or to levy war against them, or to oppose by force the authority thereof, or by force to prevent, hinder, or delay the execution of any law of the United States, or by force to seize, take, or possess any property of the United States contrary to the authority thereof . . . ." 18 U.S.C. § 2384. The principal argument of Nosair's Petition concerning his seditious conspiracy conviction is that he could not have been guilty of that charge because he was, in fact, being trained by the United States to fight the Russians in Afghanistan and not training to wage a terroristic war against the United States. But whether someone else masterminded a wholly separate conspiracy to bomb a building has nothing to do with whether Nosair plotted to wage war on the United States. On the other

hand, mountains of evidence existed demonstrating that Nosair did, in fact, engage in that very plot.  *See generally Rahman*, 189 F.3d at 104-111 (including, *inter alia*, (1) Nosair training with automatic rifles as part of Abdel Rahman's *jihad* army; (2) Nosair discussions with Rahman about the progress of the *jihad* army members' paramilitary training, and the organization of the army's facilities; (3) Nosair's suggestions to other members of the conspiracy of "numerous terrorist operations" including murders of federal judges and politicians; (4) Nosair urging El-Gabrowny, during the course of Nosair's state criminal trial to construct bombs and urging other acts of *jihad*; and (5) Nosair's diary which stated that to achieve his goals he must "destroy the morale of the enemies of Allah.  (And this is by means of destroying) (exploding) the structure of their civilized pillars.  Such as touristic infrastructure which they are proud of and their high buildings . . . .").  Thus, Yousef's statement that he masterminded the 1993 WTC bombing does not undermine confidence in Nosair's conviction for seditious conspiracy.

## B. Equitable Tolling

Though neither he nor his counsel argue it, Nosair might respond that his filing period should be equitably tolled due to his "diligence" in pursuing habeas relief through his Notices of Motions filed here in 2000 and in Louisiana in 2002, and through his Section 2241 filing in Colorado in 2008.

"AEDPA's one-year statute of limitations period for the filing of section 2255 motions may be equitably tolled where: (1) some extraordinary circumstances prevented the petitioner from filing his motion; and (2) the petitioner acted with reasonable diligence throughout the period he seeks to toll." *Reyes v. United States*, No. 07 Civ. 10943, 2009 WL 274482, at *3 (S.D.N.Y. Feb. 3, 2009). But "[i]t is not enough simply to show extraordinary circumstances; the party seeking equitable tolling has the burden of demonstrating a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of [the] filing." *Id.* (internal quotation marks omitted). "Examples of instances where courts have tolled the statute include egregious attorney misconduct, the intentional confiscation of legal papers by prison authorities, serious physical or mental illness which prevents the petitioner from filing, or where a petitioner, through no fault of his own, first learns of the outcome of a final appeal after the time for seeking habeas has expired." *Khan v. United States*, 414 F. Supp. 2d 210, 216 (E.D.N.Y. 2006) (internal quotation marks omitted).

"Courts have rarely equitably tolled AEDPA's one-year statute of limitations period, and have done so only when some extraordinary circumstance actually prevented a defendant from filing a section 2255 motion. Notably, courts have refused to equitably toll AEDPA's one-year statute of limitations period *simply because a defendant was*

*pursuing other remedies available to him.*" *Reyes*, 2009 WL 274482, at *3-4 (emphasis added); *see also Gil v. United States*, No. 10 Civ. 8907, 2010 WL 5298848, at *1 (S.D.N.Y. Dec. 21, 2010) ("The AEDPA statute of limitations is not tolled while a petitioner pursues other federal remedies.").

Thus "[a] federal prisoner cannot evade the one-year statute of limitations imposed in section 2255 by bringing a motion to vacate, correct or reduce a sentence under 28 U.S.C. § 2241 when that motion should have properly been brought under section 2255." *Chen v. United States*, No. 05 Civ. 5952, 2005 WL 3288022, at *2 n.3 (S.D.N.Y. Dec. 2, 2005) (citing *Zapata v. United States*, 99 Civ. 85, 2000 WL 1610801, at *1 n.2 (S.D.N.Y. Oct. 27, 2000)). In other words, "the filing of a motion under 28 U.S.C. § 2241 *does not toll* the limitation period found in section 2255." *Id.* (citing *Reynosa v. Hood*, 25 F. App'x 647 (9th Cir. 2002) (emphasis added)).

Nosair did not "discover" the alleged facts concerning Mohamed or 18 U.S.C. § 3231 until April 2007 and January 2008 respectively. Therefore, those allegations could not have formed the foundation of his 2000 "Notice of Motion" in this court, or his 2002 petition in the Western District of Louisiana. In any event, nothing in those petitions suggests anything about Mohamed or Section 3231. To the extent the current petition is based on those facts, however, the petition was filed late; and Nosair has not alleged any extraordinary circumstances entitling him to equitable tolling. As the cases cited in the preceding paragraphs demonstrate, pursuit of other federal habeas or appellate remedies, including the filing of a faulty Section 2241 petition, does not toll AEDPA's statute of limitations. Accordingly, Nosair is time-barred from asserting his claims based on the

suppression of Mohamed or of Yousef's statement, and based on the unconstitutionality of Section 3231 as grounds for habeas relief.

### III. CONCLUSION

For the reasons stated above, Nosair's Petition is dismissed. The Government's motion to vacate certain of Judge Fox's procedural orders [Docket no. [1026] in 1993 Cr. 00181] is denied as moot. The Clerk of the Court is directed close this case.

SO ORDERED.

Dated: New York, New York
January 10, 2012

_____
Richard J. Holwell
United States District Judge

15